IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRANKLIN TAYLOR,

    Petitioner,

vs.

GEORGE STRATTON, Warden,

    Respondent.

Case No. 2:06-cv-00702 JKS KJM P

ORDER

    Petitioner, a state prisoner proceeding *pro se*, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his conviction in Solano County Superior Court for the second degree murder of Nathaniel Joshua, the son of his girlfriend, Tiffani Roberts.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262.

    Respondent filed a motion to dismiss, which Petitioner opposed.  *See* Docket Nos. 4 (Mot.); 5 (Opp'n); 7 (Supp. opp'n); 8 (Exs. in support of opp'n).  On August 22, 2007, the magistrate judge filed findings and recommendations herein, which were served on all parties, and which contained notice to all parties that any objections were to be filed within fifteen days.  Docket No. 10.  The magistrate judge found that the Petition was untimely and recommended dismissal.  *Id*.  Petitioner has filed objections to these findings and recommendations, arguing that his Petition should not be procedurally barred because of statutory or equitable tolling, and the "actual innocence" exception articulated in *Schlup v. Delo*, 513 U.S. 298 (1995).  Docket No. 12.

    In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 72-304, this Court has conducted a *de novo* review of this case.  Having carefully reviewed the entire file, the Court finds the findings and recommendations to be supported by the record and by proper analysis.

1

## BACKGROUND

Petitioner was convicted of the second degree murder of his girlfriend's two-year-old child, Nathan.  The summary of the facts on direct appeal stated that Petitioner dropped his girlfriend off at an appointment in the morning and drove away with Nathan in the backseat.  Docket No. 1, Ex. A at 1-2.  Later that morning, Petitioner showed up at the emergency room with Nathan, who had no pulse or respiratory function, and said he had found Nathan face down in the bathtub with blood coming from his mouth.  *Id*., Ex. A at 2.  An autopsy of Nathan's body made it apparent that Nathan had died of internal injuries likely caused by a beating given with a closed fist.  *Id*.  Upset and crying, Petitioner turned himself in several days later stating that "it was an accident."  *Id*., Ex. A at 3.

The case was tried to a jury.  Petitioner's theory of the case was that his girlfriend, Tiffani Roberts, abused Nathan, and that it was her, not Petitioner, that caused Nathan's fatal injuries.  *Id*.  However, the only evidence at trial of prior abuse was that Petitioner had struck Nathan previously on at least three occasions.  *Id*., Ex. A at 2-3.  Petitioner also argued at trial that no matter who hit Nathan, the crime must have been committed in the heat of passion and was at most voluntary manslaughter.  *Id*., Ex. A at 3.  The jury returned a verdict of guilty for murder in the second degree, and the California Court of Appeal affirmed the conviction in an opinion filed May 21, 1992.  Docket No. 1, Ex. A.

Petitioner sought a writ of habeas corpus from the California Court of Appeal in November of 1996.  Docket No. 4, Ex. 2.  The petition was denied two days after receipt.   Roughly six years later, Petitioner filed another petition with the Solano County Superior Court.  Docket No. 4, Ex. 3.  The petition was denied by the superior court, the Court of Appeal, and the California Supreme Court.  Docket No. 4, Exs. 3, 4, 5.  Petitioner filed this Petition in the Northern District of California in September 2004, and it was subsequently transferred to this district in March 2006.

The magistrate judge has recommended dismissing the petition for writ of habeas corpus because it was filed well after the one-year limitation period.  Petitioner argues the deadline should be tolled, or in the alternative, waived under the "actual innocence" gateway of *Schlup v. Delo*, 513 U.S. 298 (1995).

ORDER

**DISCUSSION**

1. Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a one-year period of limitation applies to petitions from persons imprisoned pursuant to a judgment of a state court. 28 U.S.C. § 2244(d)(1). This period of limitation normally begins to run from the latest of several dates, none of which are applicable in this case as noted below. *See* 28 U.S.C. § 2244(d)(1)(A)-(D). A properly filed application for post-conviction or collateral relief from the state tolls the period of limitation. 28 U.S.C. § 2244(d)(2).

Petitioner's underlying conviction was affirmed on May 21, 1992, prior to enactment of AEDPA. *See* Docket No. 1, Ex. A. For convictions which became final prior to the date of enactment of AEDPA, the period of limitation begins to run on the date of enactment. *Laws v. Lamarque*, 351 F.3d 919, 921 (9th Cir. 2003). Thus, absent tolling, Petitioner had one year from enactment to file, giving him until April 24, 1997. *See id*. In 1996, Petitioner did file a timely habeas petition with the California Court of Appeal which was denied two days after receipt. Docket No. 4, Ex. 2. This filing tolled the period of limitations for three days, extending Petitioner's deadline to file a petition with the federal court until April 27, 1997. *See* 28 U.S.C. § 2244(d)(2). Petitioner did not file before the deadline. His current petition is therefore barred absent an argument for tolling the limitation period, or an exception like "actual innocence."

2. Statutory Tolling

Petitioner argues he should receive statutory tolling for the gap between the denials of his 1996 petition to the California Court of Appeal and his 2003 petition to the California Supreme Court. Docket No. 5 at 2. The seven-year gap between the Court of Appeal's denial and the filing of his petition with the California Supreme Court is clearly unreasonable under *Evans v. Chavis*, 546 U.S. 189, 201 (2006) (suggesting a gap of 60 days might be reasonable, but six months would not be). Moreover, the California Supreme Court found the delay unreasonable, denying Taylor's petition in a single line with a pinpoint citation to *In re Robbins*, 18 Cal.4th 770, 780 (1998), discussing "substantial delay." Petitioner's argument for statutory tolling thus fails. *See Carey v.*

ORDER

*Saffold*, 536 U.S. 214, 226 (2002) (if the California Supreme Court clearly rules that the delay is unreasonable, that ends the matter).

3. Equitable Tolling

Petitioner argues he should receive equitable tolling because: (1) his appellate counsel abandoned him; (2) his trial transcripts were lost; and (3) he had limited access to the law library. Docket No. 5 at 2. Equitable tolling is appropriate where the Petitioner demonstrates he has pursued his rights diligently and that some extraordinary circumstances stood in his way. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

With regard to abandonment by appellate counsel, the magistrate judge correctly points out that the evidence submitted by Petitioner suggests that the offending counsel was retained after the period of limitations lapsed. Docket No. 10 at 5-6. Any abandonment therefore is irrelevant to missing the deadline.

With regard to loss of his trial transcripts, the magistrate judge acknowledged that such a deprivation could count toward equitable tolling, but found that Petitioner had failed to provide evidence that he attempted to get a copy of his transcripts before the statute lapsed, and that Petitioner had failed to establish a causal link between the missing transcripts and the seven-year delay. Docket No. 10 at 6-7. First, although he alleges he tried to get them, Petitioner has not provided any evidence that he actually made any efforts. Second, Petitioner's timely filed petition to the California Court of Appeal in 1996 indicates the absence of the transcripts was no great obstacle.[1] Third, Petitioner's main claim is that his trial attorney was ineffective because she failed to interview witnesses who could have testified to Tiffani Robert's violence against Nathan. Petitioner did not need the transcript of trial to develop this argument. In sum, the Court agrees with the magistrate judge that Petitioner has not demonstrated the causal link between the absence of the transcripts and the delay.

---

[1] The Ninth Circuit has held the filing of a petition in the absence of transcripts does not automatically defeat a claim that the absence delayed an untimely filing. *See United States v. Battles*, 362 F.3d 1195, 1196-97 (9th Cir. 2004). However, the filing is a factor suggesting that the loss of the transcripts did not prevent his timely filing.

ORDER

With regard to access to the law library, the magistrate judge concluded that Petitioner had failed to link his limited access to the library to his inability to file a timely petition. Docket No. 10 at 7. Petitioner made only a conclusory allegation that he was unable to access the library because he was on lockdown "much of the time" while he was pursuing his habeas claim. The Court concurs with the magistrate judge that this bare statement, without any offer of support, fails to meet the Petitioner's burden of demonstrating that timeliness was beyond his control.

4. <u>Actual Innocence</u>

Petitioner's final argument is that procedural default should not stand in his way because he meets the standard for the "actual innocence" gateway articulated by *Schlup v. Delo*, 413 U.S. 298 (1995). Docket Nos. 7 at 1-2; 8 at 2. *Schlup* "held that prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 126 S. Ct. 2064, 2076-77 (2006) (quoting *Schlup*, 513 U.S. at 327). The Ninth Circuit has suggested that a sufficient *Schlup* showing might overcome the procedural bar to untimely claims. *Majoy v. Roe*, 296 F.3d 770, 775-76 (9th Cir. 2002). To prevail at this gateway stage, a petitioner must "demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt–or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House*, 126 S. Ct. at 2077.

Petitioner makes both a factual and legal argument for actual innocence. To support his factual argument for actual innocence, Petitioner has presented affidavits of persons who would have testified that Tiffani Roberts had on prior occasions physically abused Nathan. Petitioner reasons that this testimony would have balanced the evidence of his prior acts of physical abuse against Nathan and created a reasonable doubt as to whether it was he or Tiffani Roberts who rendered the fatal blows.

The magistrate judge examined Petitioner's *Schlup* argument and concluded that the Petitioner had not carried his burden. Docket No. 10 at 7-11. Specifically, the magistrate judge reasoned that the affidavits were inapposite because, even if Tiffani Roberts was in the habit of abusing Nathan, it was Petitioner who was alone with Nathan when the lethal blows were struck.

ORDER

5

*See* Docket No. 10 at 10.  The magistrate judge based this conclusion on the Court of Appeal's summary of fact indicating that Petitioner was alone with Nathan after dropping Tiffani Roberts off at her appointment, and the medical examiner's testimony, as set forth by the Solano Superior Court, that Nathan died within 15-20 minutes of receiving the lethal injuries.[2]  *See id*.  The magistrate judge found this inference was "bolstered by petitioner's apparent concession that he struck Nathan before he died; as he told police, the death was 'an accident.'"  *Id*.

Petitioner objects to the magistrate judge's findings and conclusions with regard to his factual argument for actual innocence.  First, Petitioner argues that his statement that Nathan's death was "an accident" was not a concession he had struck Nathan, but is equally consistent with Tiffani Roberts killing Nathan accidentally, or an accidental fall in the bathtub.  Docket No. 12 at 1.  Second, Petitioner argues that the evidence of Tiffani's abusive behavior presented in the declarations must show "actual innocence," because the same type of prior abuse evidence was sufficient to convict him.  *Id*. at 2-3.  Third, Petitioner argues that the magistrate judge's conclusion that he was alone with Nathan at the time the lethal blows were rendered is factually inaccurate.  *Id*. at 3.

With regard to his first objection, the Court agrees with Petitioner in the abstract that his statement to police that Nathan's death was "an accident" need not be taken as an admission he struck Nathan.  Given this statement alone, the jury could have made several different inferences from the statement as Petitioner suggests.  However, given the strong circumstantial evidence presented at trial, Petitioner's statement does support the ultimate inference that Petitioner struck Nathan causing the lethal injuries.

Petitioner's second objection is also without merit.  Although the evidence, if credited, might establish that Tiffani Roberts was abusive to Nathan, it does not by itself make it more

---

[2] As neither party had submitted transcripts of trial, the magistrate judge relied on the facts as found by the California Court of Appeal in 1992, and by the Solano County Superior Court in its denial of Petitioner's 2002 petition.  *See* Docket No. 10 at 8.  These facts are presumed correct.  28 U.S.C. § 2254(e)(1).  However, the magistrate judge's inferences are not.  Accordingly, out of an abundance of caution, this Court ordered Respondent to file the transcripts of trial to augment the record.  *See* Docket Nos. 16, 20.

ORDER

probable than not that any reasonable juror would have reasonable doubt. As the magistrate judge reasoned, such evidence is inapposite if Nathan was in Petitioner's sole custody at the time the lethal blows were struck. This brings us to Petitioner's third objection.

Petitioner objects to the magistrate judge's conclusion that the evidence demonstrated that Nathan was in his custody at the time the lethal blows were inflicted. The magistrate judge based this conclusion on two sources: (1) the factual summary rendered by the Court of Appeal placing Nathan in Petitioner's sole custody between dropping Tiffani Roberts off at an appointment and arriving at the emergency room with Nathan's lifeless body; and (2) the Solano Superior Court's mention of "expert testimony of only a 15-20 minute bleed-out time between the lethal blows and the child's death." Docket Nos. 10 at 10; 1, Ex. M at 2. Petitioner has not disputed that Nathan was in his custody from 8:35 a.m. until Petitioner brought Nathan's lifeless body to the emergency room at 10:40 a.m.[3] *See* Docket No. 12 at 3. Rather, Petitioner argues that Nathan's body temperature of 92.6 degrees, taken at 10:48 a.m., demonstrates that Nathan died around 7:30 a.m. while he was still in Tiffani Robert's custody. *Id*.

The Court has extensively examined the transcript of trial and determined that Petitioner's third objection is also without merit. Nathan's body temperature was 92.6 degrees at 10:48 a.m. RT 169-70, 176. The medical examiner, Dr. Lucas, who performed Nathan's autopsy testified that Nathan probably died from his injuries within 15 to 20 minutes of being injured. RT 29-30. As Petitioner correctly notes in his objections, Dr. Lucas further testified that if one assumed a normal body temperature of 98.6 degrees prior to death and a loss of 1.8 degrees per hour after death, Nathan's body temperature of 92.6 degrees suggests he died a little over three hours before his temperature was taken. RT 32. However, Petitioner fails to point out that Dr. Lucas also testified that these were averages and that a dead body immersed in water would lose heat more quickly. RT 32-33. This is precisely the inference that jurors were asked to make.

---

[3]Even if he had disputed this fact, the testimony of Tiffani Roberts, registered nurse Michael Modrich, neighbor Patricia Fowler, and the records from the welfare office collectively make an extremely strong case for the proposition that Nathan was in Petitioner's physical custody during this period. *See* RT 88; 167-68; 260-61; 190.

ORDER

7

Tiffani Roberts testified that she spoke with Petitioner by phone during a break in her orientation around 10:00 a.m. RT 88. Petitioner told her he had given Nathan a bath. *Id*. While Petitioner was on the phone with Roberts, Nathan apparently had a bowel movement, which Petitioner said he would take care of. RT 88-89, 121. Later that morning, Petitioner separately told Tiffani Roberts and two hospital personnel that he found Nathan face down in the bathtub. RT 89-90, 170, 172, 179. Several hours after Nathan died, a crime scene investigator found feces and measured 1½ inches of water in the bathtub where Petitioner alleged to have found Nathan unconscious. RT 246, 248. It would not be unreasonable for the jury to infer that Nathan's body lost heat more quickly than normal because his lifeless body was left lying in cold or lukewarm water for some period of time prior to Petitioner bringing him to the emergency room. Petitioner's objection thus fails to demonstrate any error in the magistrate judge's conclusion that Nathan was in Petitioner's sole custody at the time the lethal blows were given. As such, the magistrate judge is correct that Petitioner's new affidavits are inapposite.

Finally, the Court notes that it believes the magistrate judge was correct to reject Petitioner's second argument for "actual innocence" based upon *Jaramillo v. Stewart*, 340 F.3d 877, 880-82 (9th Cir. 2003) (holding that evidence of "actual innocence" includes evidence that the prisoner is guilty of a lesser crime such as manslaughter instead of murder). Contrary to Petitioner's assertion, a difficult potty-training incident with a two-year-old child by itself does not constitute facts and circumstances which would bring an ordinary reasonable person to an assaultive rage. The Court thus agrees that Petitioner has not pointed to any facts which would support his assertion that heat of passion applied.

As there is no basis for tolling or the actual innocence exception, this action is barred by 28 U.S.C. § 2244(d)(1). Further, as the Court's dismissal of this case on procedural grounds is not debatable by reasonable jurists, the Court declines to issue a Certificate of Appealability.[4]

---

[4] *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000) (when a petition has been denied "on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling").
ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1. The findings and recommendations filed August 22, 2007, are adopted in full;

2. Respondent's Motion to dismiss at Docket No. 4 is GRANTED;

3. Petitioner's application for a writ of habeas corpus is DISMISSED;

4. The Clerk shall enter judgment accordingly; and

5. The Court declines to issue a Certificate of Appealability. Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

Dated this the 28th day of March 2008.

        /s/ James K. Singleton, Jr.
        **JAMES K. SINGLETON, JR.**
        United States District Judge

ORDER